Bobby Joe STEWARD, Defendant–
Appellant,

v.

STATE of Indiana, Plaintiff–Appellee.

No. 65S04–9506–CR–677.

Supreme Court of Indiana.

June 23, 1995.

Jeffery L. Lantz, Jon Aarstad, Evansville, for appellant.

Pamela Carter, Atty. Gen., Cynthia L. Ploughe, Deputy Atty. Gen., for appellee.

DICKSON, Justice.

In prosecutions for child molesting, is child sexual abuse syndrome, profile, or pattern evidence admissible to prove that child abuse occurred? To address this important question, we grant transfer.

Defendant Bobby Joe Steward was convicted of two counts of child molesting, one involving victim S.M. and the other involving victim A.M. In his appeal from the convictions, the defendant presented multiple issues. Our Court of Appeals affirmed the defendant's conviction for molesting A.M. but reversed the conviction relating to S.M. because the trial court unconstitutionally excluded evidence of allegations claimed to have been made by S.M. that she had been molested by others, proffered by the defendant to offer an alternative explanation for the State's evidence that her behavior was consistent with that of a victim of sexual abuse. *Steward v. State* (1994), Ind.App., 636 N.E.2d 143. As to those issues addressed by the Court of Appeals, we summarily affirm pursuant to Indiana Appellate Rule 11(B)(3).

In his briefs to this Court and the Court of Appeals, the defendant argues that expert testimony regarding the child sexual abuse syndrome is unreliable and unscientific and thus inadmissible, citing, inter alia, Indiana Evidence Rule 702; *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (1993), — U.S. —, 113 S.Ct. 2786, 125 L.Ed.2d 469; *Commonwealth v. Dunkle* (1992), 529 Pa. 168, 602 A.2d 830; and *State v. Rimmasch* (1989), Utah, 775 P.2d 388. In his transfer petition, the defendant asserts that the Court of Appeals failed to address this argument.

The Court of Appeals discussed the possible problems with the use of such syndrome evidence for the purpose of vouching for a victim's credibility, correctly noting that a witness may not testify that another is or is not telling the truth, *Steward,* 636 N.E.2d at 146–47; *see* Ind.Evidence Rule 704(b), but finding that the defendant waived this claim of error by failing to make a timely objection. *Steward,* 636 N.E.2d at 147. We grant transfer solely to address the defendant's further argument that, regardless of the resolution of the vouching issue, such syndrome testimony is scientifically unreliable evidence and is thus inadmissible. This is an important question likely to arise in future cases, including the retrial of this defendant.[1]

The defendant, a 52–year–old police officer and family friend of the alleged victims, was convicted of one count of child molesting, a class C felony, for performing sexual intercourse with S.M. when she was 15 years of age;[2] acquitted of three other counts of child molesting as to S.M.; and convicted of child molesting, a class D felony, for touching and/or fondling S.M.'s 13–year–old sister, A.M., with the intent to arouse sexual desires.[3]

---

1. In support of this transfer petition, the defendant further contends that his conviction for the child molesting of A.M. should be reversed because the child sexual abuse syndrome evidence, although directly relating only to S.M., generally prejudiced the defendant by bolstering the credibility of the State's witnesses, impliedly bolstering S.M.'s testimony, and strengthening the State's portrayal of the defendant as a sexual deviant. As to his conviction for molesting A.M., we agree with the Court of Appeals's finding that by failing to object to the testimony, the defendant waived his claim, *Steward,* 636 N.E.2d at 147; and we find that no fundamental error occurred.

2. Ind.Code Ann. § 35–42–4–3(c) (West 1986). This statute was substantially amended in 1994. *See* Ind.Code Ann. § 35–42–4–3 (West Supp. 1994).

3. Ind.Code Ann. § 35–42–4–3(d) (West 1986). This section was substantially amended in 1994. *See* Ind.Code Ann. § 35–42–4–3 (West Supp. 1994).

As noted by the Court of Appeals, the State presented evidence at trial that S.M.'s behavior was consistent with that of other victims of child sexual abuse in order to prove that sexual contact occurred. *Steward*, 636 N.E.2d at 149–50. The State called Betty Watson, Ph.D., a licensed clinical psychologist with considerable professional experience who had provided treatment for S.M. After stating that common traits or behavioral symptoms are found in teenagers who have experienced sexual abuse, Record at 1276, Dr. Watson testified that S.M. exhibited such symptoms, identifying poor self-esteem, "family problems," association with an older peer group, depression, leaving home without permission, and problems with school behavior and performance. Record at 1277–83.

The State also presented testimony from Michael S. Girton, a minister and executive director of a licensed group residential treatment facility, and his wife, Katherine R. Girton, a caseworker at the facility. After establishing that Rev. Girton had taken courses in "sexual abuse work," including "being able to identify sexual abuse," the State asked him whether, based upon his personal experience, "kids who have known incidents of sexual abuse exhibit certain traits or characteristics or behavior patterns." Record at 1378. Rev. Girton answered, "Yes," and described the following types of behavior that he looks for "in the characterization of sexual abuse":

> Anything for medical reasons, from bladder infections to abnormal medical problems, and more of the characteristics, the girls can be anything from promiscuous, they can be very timid, they can come in with extremely low esteem. Almost exclusively, that is going to be a major characteristic. Some of the different cues can range in areas from being really over timid to different kind of touches and approaches, where you would approach them in different directions or from different manners or methods. You might even put your hand on their shoulder and that might freak them out or something. There is a lot of different areas where just working with them it becomes really quite evident. You can see that behavior demonstrated quite plainly.

Record at 1378–79. Both Rev. and Mrs. Girton testified that there was a marked change in S.M.'s behavior immediately after S.M. disclosed to them and to Dr. Watson that she had had a sexual relationship with the defendant. Record at 1322, 1324–26, 1400–01.

The defendant argues that testimony concerning similarities between S.M.'s behaviors and those of known child abuse victims is not scientifically reliable evidence to prove S.M. was sexually abused and is therefore inadmissible.

### 1. The Problem

The admissibility of expert testimony regarding child sexual abuse syndrome evidence is controversial and has received substantial criticism. Recognition of the prevalence of child sexual abuse and intensive study of the problem by behavioral scientists did not begin until the mid–1970s. David McCord, *Expert Psychological Testimony About Child Complainants in Sexual Abuse Prosecutions: A Foray Into the Admissibility of Novel Psychological Evidence*, 77 J.Crim.L. & Criminology 1, 2–3 (1986). The Child Sexual Abuse Accommodation Syndrome (CSAAS) was first identified by Dr. Roland Summit in a 1983 article in which he described five experiences typically occurring in sexually abused children: (1) secrecy about the sexual abuse, often ensured by threats of negative consequences of disclosure; (2) emotional helplessness to resist or complain; (3) entrapment and accommodation, where the child sees no way to escape ongoing abuse and thus learns to adapt; (4) delayed, conflicted, and unconvincing disclosure of the abuse; and (5) retraction of the child's allegations in an attempt to restore order to the family structure when the disclosure threatens to destroy it. Roland C. Summit, *The Child Sexual Abuse Accommodation Syndrome*, 7 Child Abuse & Neglect 177, 181–88 (1983). [hereinafter Summit, *The CSAAS*]. Summit has noted that, since his original identification and description of CSAAS, which he refers to as "a clinical observation," it "has become both elevated as gospel and denounced as dangerous pseudo-

science." Roland C. Summit, *Abuse of the Child Sexual Abuse Accommodation Syndrome*, 1 J. of Child Sexual Abuse 153, 153 (1992) [hereinafter Summit, *Abuse of the CSAAS*]. The syndrome was not intended as a diagnostic device and does not detect sexual abuse. John E.B. Myers et al.,[4] *Expert Testimony in Child Sexual Abuse Litigation*, 68 Neb.L.Rev. 1, 67 (1989). Rather, the syndrome was designed for purposes of treating child victims and offering them more effective assistance "within the family and within the systems of child protection and criminal justice," Summit, *The CSAAS, supra*, at 179–80, and helps to explain reactions—such as recanting or delayed reporting—of children assumed to have experienced abuse. Myers et al., *supra*, at 67–68.

Because children's responses to sexual abuse vary widely, and because many of the characteristics identified by CSAAS, or by similar victim behavior groupings, may result from causes unrelated to abuse, diagnostic use of syndrome evidence in courtrooms poses serious accuracy problems. *See State v. Foret* (1993), La., 628 So.2d 1116, 1124–27; *State v. J.Q.* (1991), App.Div., 252 N.J.Super. 11, 599 A.2d 172, 181–82 [hereinafter "*J.Q. I* "], *aff'd* (1993), 130 N.J. 554, 617 A.2d 1196 [hereinafter "*J.Q. II* "]; *Dunkle*, 602 A.2d at 833–35; *Rimmasch*, 775 P.2d at 401–02. *See also* Josephine Bulkley, *Legal Proceedings, Reforms, and Emerging Issues in Child Sexual Abuse Cases*, 6 Behavioral Sci. & L. 153, 174–75; David Finkelhor, *Early and Long-Term Effects of Child Sexual Abuse: An Update*, 21 Prof.Psych.Res. & Prec. 325, 328–29 (1990); McCord, *supra*, at 18–24; Myers et al., *supra*, at 67–68. The syndrome's discoverer has noted, "Adversarial rivals seem determined to enhance it or to destroy it according to their designated role." Summit, *Abuse of the CSAAS, supra*, at 156. Summit explains that:

> some criticism has been a legitimate defense against improper use by prosecutors and expert witnesses called by prosecution. There has been some tendency to use the CSAAS as an offer of proof that a child has been abused. A child may be said to be *suffering from* or *displaying* the CSAAS, as if it is a malady that proves the alleged abuse. Or a child's conspicuous helplessness or silence might be said to be *consistent with* the CSAAS, as if not complaining proves the complaint. Some have contended that a child who retracts is a more believable victim than one who has maintained a consistent complaint.

Summit, *Abuse of the CSAAS, supra*, at 159–60. Our discussion today encompasses not only CSAAS but also similar descriptions of "typical" behavior profiles or patterns, whether or not termed "syndromes," all of which we shall refer to generally as "child sexual abuse syndrome," or "syndrome evidence." [5]

Courts have witnessed the presentation of child sexual abuse syndrome evidence for three major purposes: (1) to prove directly—through either implication or explicit testimony of the expert's conclusion—the fact that

4. Myers is listed as a Professor of Law at the McGeorge School of Law, University of the Pacific, in Sacramento, California. The expertise of his co-authors is widespread and varied. At the time of publication, their credentials included: Jan Bays, M.D. and F.A.A.P., Medical Director of Child Abuse Programs at Emmanuel Hospital and Health Center, Portland, Oregon; Judith Becker, Ph.D., Professor of Clinical Psychology at Columbia University's College of Physicians and Surgeons and Director of the Sexual Behavior Clinic, New York Psychiatric Institute; Lucy Berliner, M.S.W., Assistant Clinical Professor of Social Work at the University of Washington's College of Social Work, and Research Director of Harborview Sexual Assault Center in Seattle, Washington; David L. Corwin, M.D., psychiatric consultant to the Multidisciplinary Child Abuse Team at Children's Hospital, Oakland, California, and a child psychiatrist in private practice;

and Karen J. Saywitz, Ph.D., Assistant Professor of Psychiatry at UCLA School of Medicine and the Director of Child and Adolescent Psychology Services in the Division of Child and Adolescent Psychiatry, Harbor/UCLA Medical Center, Los Angeles.

5. The Pennsylvania Supreme Court, for instance, grouped together with CSAAS syndrome phenomena known as "Sexually Abused Child Syndrome" and "the Child Abuse Syndrome." *Dunkle*, 602 A.2d at 832. It should be noted that our analysis today is not applicable to battered child syndrome, which identifies signs—including various physical symptoms and their inconsistency with a story about accidental injury—of physical child abuse and is generally considered a sound diagnostic tool. *See id.* at 835–36; *Rimmasch*, 775 P.2d at 400–01; Myers et al., *supra*, at 67.

abuse actually occurred; (2) to counter claims that the testimony or behavior of alleged victims is inconsistent with abuse or otherwise not credible; and (3) to opine that, because the behavioral characteristics of the child comport with the syndrome profile, the child is likely to be telling the truth. In this opinion we explore the first and second of these applications and summarily affirm the Court of Appeals decision as to the third.

Trial and appellate courts face the challenge of determining under what circumstances, if any, such evidence is admissible, acutely aware of the potentially severe consequences of error in either direction. This challenge is heightened by the distinctive evidentiary problems posed by prosecutions for child sexual abuse:

> Often these cases pit the word of a traumatized child against that of an adult. Child sexual abuse typically occurs in private, when the abuser is confident that there will be no witnesses. Therefore, the child victim is usually the only eyewitness. The prosecution's case is severely hampered if the court finds the child to be too young to be a witness or incompetent to testify. Even if the child does testify, several factors often limit the effectiveness of this testimony. The child's cognitive and verbal abilities may not enable her to give consistent, spontaneous, and detailed reports of her sexual abuse. A child who must testify against a trusted adult, such as a parent or relative, may experience feelings of fear and ambivalence, and may retract her story because of family pressures or insensitivities in the legal process.

> Prosecutors face another dilemma when offering the child victim as a witness if the child has delayed reporting the abuse. Jurors may interpret delayed disclosure as evidence of fabrication, especially if defense counsel suggests this conclusion during cross-examination of the child. Further, jurors may hold misconceptions that the child has memory deficits, is suggestible, cannot distinguish between fact or fantasy, or is likely to fabricate sexual experiences with adults. These problems are compounded by the lack of corroborative physical or mental evidence in many child sexual abuse cases.

Lisa R. Askowitz, Comment, *Restricting the Admissibility of Expert Testimony in Child Sexual Abuse Prosecutions: Pennsylvania Takes it to the Extreme,* 47 U.Miami L.Rev. 201, 201–03 (1992) (footnotes omitted).

The utilization of innovative methodologies to address these problems must be balanced with "the preservation of the constitutional right to presumption of innocence in a criminal case." *See People v. Leon* (1989), Cal.Ct. App., 263 Cal.Rptr. 77, 86. As the Supreme Court of Utah has noted:

> the fact that child sexual abuse has emerged as a critical problem about which the public is seriously concerned does not mean all legal rules that may constitute obstacles to increasing the conviction and incarceration rates of those accused of such crimes, as opposed to those actually guilty, can properly be brushed aside.

*Rimmasch,* 775 P.2d at 390. Similarly, the Delaware Supreme Court has observed:

> a sexual abuse charge by itself imposes a stigma on the accused and conviction provides a serious penalty. In interpreting our rules of evidence, we must be aware not only of the needs of society in general but also the defendant's right to a fair trial.

*Wheat v. State* (1987), Del., 527 A.2d 269, 275. The particular dilemma expert testimony poses in these emotionally charged cases has been aptly described by the Supreme Court of Michigan:

> Given the nature of the offense and the terrible consequences of a miscalculation— the consequences when an individual, on many occasions a family member, is falsely accused of one of society's most heinous offenses, or, conversely, when one who commits such a crime would go unpunished and a possible reoccurrence of the act would go unprevented—appropriate safeguards are necessary. To a jury recognizing the awesome dilemma of whom to believe, an expert will often represent the only seemingly objective source, offering it a much sought-after hook on which to hang its hat.

*People v. Beckley* (1990), 434 Mich. 691, 456 N.W.2d 391, 404.

### 2. Other States' Approaches

A few decisions from other states have held child sexual abuse syndrome evidence inadmissible for any purpose,[6] and some cases have permitted expert testimony opining that, because of the correlation between a child's behavior and the syndrome, the child has been sexually abused.[7] Most jurisdictions, however, have settled somewhere between these two extremes.

A significant number of state courts have recognized as a misuse of the syndrome the admission of child sexual abuse syndrome testimony as substantive proof that abuse has been detected in a particular case. Wisconsin courts, for instance, have rejected the use of testimony that the defendant's daughter was "a typical case of intrafamilial sexual abuse" and thus an incest victim, *State v. Haseltine* (1984), Wis.Ct.App., 120 Wis.2d 92, 352 N.W.2d 673, 675, and have held to be error the admission of expert testimony that a complainant's behavior following an alleged sexual assault was proof that the assault occurred, *State v. Jensen* (1987), Wis.Ct.App., 141 Wis.2d 333, 415 N.W.2d 519 (requiring evidence of abuse and of seemingly contradictory behavior by complainant as a foundation for admitting syndrome evidence), *aff'd* (1988), 147 Wis.2d 240, 432 N.W.2d 913. The Arkansas Supreme Court held that a trial court erred in permitting an expert to testify that, in part because the victim's history was consistent with the doctor's experiences dealing with child abuse, he believed that abuse had occurred. *Johnson v. State* (1987), 292 Ark. 632, 732 S.W.2d 817.

Other cases that have likewise rejected the use of syndrome evidence as affirmative proof of the occurrence of abuse include: *People v. Bowker* (1988), 203 Cal.App.3d 385,

249 Cal.Rptr. 886; *Leon,* 263 Cal.Rptr. 77; *Lantrip v. Commonwealth* (1986), Ky., 713 S.W.2d 816; *State v. York* (1989), Me., 564 A.2d 389; *State v. Lawrence* (1988), Me., 541 A.2d 1291; *State v. Black* (1988), Me., 537 A.2d 1154; *Goodson v. State* (1990), Miss., 566 So.2d 1142; *J.Q. II,* 617 A.2d 1196; *State v. Michaels* (1993), App.Div., 264 N.J.Super. 579, 625 A.2d 489, *aff'd* (1994), 136 N.J. 299, 642 A.2d 1372; *People v. Duell* (1990), 163 A.D.2d 866, 558 N.Y.S.2d 395; *State v. Schimpf* (1989), Tenn.Crim.App., 782 S.W.2d 186; *Rimmasch,* 775 P.2d 388; *State v. Gokey* (1990), 154 Vt. 129, 574 A.2d 766; *State v. Jones* (1993), 71 Wash.App. 798, 863 P.2d 85, *review denied* (1994), 124 Wash.2d 1018, 881 P.2d 254.

Additional disagreement exists on the issue of the admissibility of syndrome evidence where the expert merely describes certain behavioral characteristics as being consistent with sexual abuse, thereby offering direct proof through implication, rather than where the expert explicitly draws the conclusion for the jury. Numerous cases have ruled such implication evidence inadmissible as proof that an assault occurred. *See State v. Moran* (1986), 151 Ariz. 378, 385, 728 P.2d 248, 255; *Russell v. State* (1986), 289 Ark. 533, 712 S.W.2d 916; *People v. Jeff* (1988), 204 Cal. App.3d 309, 251 Cal.Rptr. 135; *Beckley,* 456 N.W.2d at 391; *Michaels,* 625 A.2d 489. In contrast, other jurisdictions have ruled in favor of admissibility where the expert presents evidence of abuse through implication but refrains from giving an explicit opinion on whether abuse occurred. *See United States v. St. Pierre* (1987), 8th Cir., 812 F.2d 417; *Rodriguez v. State* (1987), Alaska Ct. App., 741 P.2d 1200; *Ward v. State* (1988), Fla.Dist.Ct.App., 519 So.2d 1082; *State v. Reser* (1989), 244 Kan. 306, 767 P.2d 1277;

---

**6.** *See Hester v. Commonwealth,* Ky., 734 S.W.2d 457, *cert. denied* (1987), 484 U.S. 989, 108 S.Ct. 510, 98 L.Ed.2d 508; *Mitchell v. Commonwealth* (1989), Ky., 777 S.W.2d 930; *Dunkle,* 602 A.2d 830.

**7.** *See Broderick v. Kings's Way Assembly of God Church* (1991), Alaska, 808 P.2d 1211, 1215–17; *Matter of Cheryl H.* (1984), 153 Cal.App.3d 1098,

200 Cal.Rptr. 789, 799, *overruled in part by People v. Brown* (1994), 8 Cal.4th 746, 35 Cal. Rptr.2d 407, 883 P.2d 949, 951–53; *Glendening v. State* (1988), Fla., 536 So.2d 212, 220, *cert. denied* (1989), 492 U.S. 907, 109 S.Ct. 3219, 106 L.Ed.2d 569; *State v. Hester* (1988), 114 Idaho 688, 760 P.2d 27, 31; *State v. Geyman* (1986), Mont., 729 P.2d 475, 479–80; *Townsend v. State* (1987), 103 Nev. 113, 734 P.2d 705, 708; *State v. Timperio* (1987), 38 Ohio App.3d 156, 528

*State v. Bachman* (1989), S.D., 446 N.W.2d 271; *Gokey,* 574 A.2d 766.

It is important to recognize that syndrome evidence is not similarly problematic in all situations. The reliability of syndrome evidence, although highly questionable for purposes of affirmatively proving sexual abuse, is generally accepted for purposes of helping the jury to understand that a complainant's reactions are not atypical of a young sexual assault victim. As the Myers article notes:

> The accommodation syndrome has a place in the courtroom. The syndrome helps explain why many sexually abused children delay reporting their abuse, and why many children recant allegations of abuse and deny that anything occurred. If use of the syndrome is confined to these rehabilitative functions, the confusion clears, and the accommodation syndrome serves a useful forensic purpose.

Myers et al., *supra,* at 67–68. Thus, behavioral characteristics of child abuse victims, even where inadmissible to prove abuse, are far less controversial when offered to rebut a claim by the defense that a child complainant's behavior—such as delayed reporting or retracting allegations—is inconsistent with her claim of abuse. This more limited, but nonetheless important, purpose is in harmony with the syndrome's original mission. Indeed, "[a] myriad of expert writings in the psychology field have countenanced" such use of the evidence, which has "received nearly universal judicial approval." *J.Q. I,* 599 A.2d at 183; *see also* Myers et al., *supra,* at 68.

The following cases, for example, have allowed expert testimony to explain failures to report or delays in reporting incidents of abuse or sexual assault; *Bostic v. State* (1989), Alaska Ct.App., 772 P.2d 1089, *rev'd on other grounds* (1991), Alaska, 805 P.2d 344; *People v. Hampton* (1987), Colo., 746 P.2d 947; *People v. Matlock* (1986), 153 Mich.App. 171, 395 N.W.2d 274; *State v. Sandberg* (1987), Minn., 406 N.W.2d 506; *Smith v. State* (1984), 100 Nev. 570, 688 P.2d 326; *State v. Garfield* (1986), 34 Ohio App.3d 300, 518 N.E.2d 568, 571; *State v. Hicks* (1987), 148 Vt. 459, 535 A.2d 776, 777–78; *Scadden v. State* (1987), Wyo., 732 P.2d 1036,

1047. Several state decisions have allowed such expert testimony to explain recantations or other apparent inconsistencies in children's reports or behavior. *See Moran,* 728 P.2d at 251–52, 254; *Black,* 537 A.2d at 1156; *State v. Rogers* (1987), 293 S.C. 505, 362 S.E.2d 7, 8, *overruled in part by State v. Schumpert* (1993), S.C., 435 S.E.2d 859, 862 n. 1; *Griego v. State* (1988), Wyo., 761 P.2d 973. Other cases permitting syndrome testimony to be utilized for rehabilitation purposes include: *Bowker,* 249 Cal.Rptr. at 891–92; *Wheat,* 527 A.2d at 273–75; *Beckley,* 456 N.W.2d at 399; *State v. Myers* (1984), Minn., 359 N.W.2d 604, 609–10; *J.Q. II,* 617 A.2d at 1209; *State v. Middleton* (1983), 290 Or. 427, 657 P.2d 1215, 1221; *State v. Hudnall* (1987), 293 S.C. 97, 359 S.E.2d 59, *overruled in part by State v. Schumpert* (1993), S.C., 435 S.E.2d 859, 862; *Jones,* 863 P.2d at 98–99.

Many of these courts have differentiated between admitting such evidence to explain the victim's seemingly suspicious behaviors and admitting it to prove that abuse occurred. *See, e.g., Moran,* 728 P.2d at 251–52 (approving expert testimony to rehabilitate child but not testimony that the alleged victim is telling the truth); *Bowker,* 249 Cal. Rptr. at 891–92 (permitting expert testimony's use to rehabilitate witness concerning delays and recantation but directing that jury be instructed not to use the testimony to determine whether the victim was molested); *Matlock,* 395 N.W.2d at 277–78 (limiting expert testimony to rehabilitation concerning delays while precluding it to prove abuse or confirm truthfulness of witness).

The use of syndrome evidence for rehabilitative purposes has not met with universal approval. In *Dunkle,* the Pennsylvania Supreme Court prohibited from admission in child sexual abuse cases essentially all expert testimony concerning behavior patterns. *Dunkle,* 602 A.2d 830.[8] *Dunkle's* approach is noteworthy because much of the expert testimony excluded seems to have been offered for rehabilitative, not diagnostic, purposes. The evidence sought to explain in general terms, without reference to the alleged victim, "why a victim would delay reporting an offense, why a victim might be unable to

---

N.E.2d 594, 596; *State v. Edward C.L.* (1990), 183 W.Va. 641, 398 S.E.2d 123, 141.

**8.** *See also Hester v. Commonwealth,* Ky., 734 S.W.2d 457, *cert. denied* (1987), 484 U.S. 989,

108 S.Ct. 510, 98 L.Ed.2d 508; *Mitchell v. Commonwealth* (1989), Ky., 777 S.W.2d 930.

recall exact dates and times of an alleged offense, and why victims of sexual abuse omitted details of the incident when they first told their stor[ies]." *Dunkle*, 602 A.2d at 831. Permitting such evidence, the *Dunkle* court believed, "would infringe upon the jury's right to determine credibility," because the reasons for delay, inconsistencies, and omissions in victims' allegations "are easily understood by lay people and do not require expert analysis." *Id.* at 836–37. Such a complete exclusion of child sexual abuse syndrome evidence for any purpose is generally not favored. *See* Myers et al., *supra*, at 89, 92–93 (recognizing need for expert testimony to counteract jurors' commonly held misconceptions about sexual abuse and to explain emotional reactions that cause children's seemingly self-impeaching behavior).

A contrasting approach has been taken by the Michigan Supreme Court. While finding syndrome evidence admissible when a victim's behavior becomes an issue in a case, it noted that:

> the evidence has a very limited use and should be admitted cautiously because of the danger of permitting an inference that as a result of certain behavior sexual abuse in fact occurred, when evidence of the syndrome is not a conclusive finding of abuse. Although syndrome evidence may be appropriate as a tool for purposes of treatment, we hold that it is unreliable as an indicator of sexual abuse.

*Beckley*, 456 N.W.2d at 406. The Michigan court allowed the testimony "to give the jury a framework of possible alternatives for the behaviors of the victim at issue," and to assist the jury in "dispelling any popular misconception commonly associated with the demonstrated reaction." *Id.* The court cautioned that:

> to assist the jury in understanding the unique reactions of victims of sexual assault, the testimony should be limited to whether the behavior of this particular victim is common to the class of reported child abuse victims. The expert's evaluation of the individual behavior traits at issue is not centered on what was observed in this victim, but rather whether the behavioral sciences recognize this behavior as

being a common reaction to a unique criminal act.

*Id.* at 406–07. The *Beckley* court warned:

> Given the abhorrence of the crime, it is inevitable that those who treat a child victim will have an emotional inclination toward protecting the child victim. The expert who treats a child victim may lose some objectivity concerning a particular case. Therefore to avoid the pitfall of the treating professional being inclined to give an opinion regarding whether the complaining witness had been sexually abused, we caution the trial court to carefully scrutinize the treating professional's ability to aid the trier of fact when exercising discretion and qualifying such an expert witness.

*Beckley*, 456 N.W.2d at 408. The Michigan Supreme Court concluded that it was unwilling to have "the so-called child sexual abuse syndrome . . . introduced as a scientific tool, standing on its own merits as a doctrine or benchmark for determining causality in child sexual abuse cases." *Id.* at 409. However, it also held that:

> persons otherwise properly qualified as experts in dealing with sexually abused children should be permitted to rely on their own experience and their knowledge of the experience of others to rebut an inference that specific behavioral patterns attributed to the victim are not [sic] uncharacteristic of the class of child sexual abuse victims. Such witnesses should be permitted to testify regarding characteristics of sexually abused children so long as it is without reference to a fixed set of behaviors constituting a "syndrome."

*Id.*

Commentators have embraced judicial decisions rejecting the use of CSAAS to prove abuse and advocating limiting its use to explaining victim behaviors that are seemingly inconsistent with their allegations. *See, e.g.,* Marian D. Hall, *The Role of Psychologists as Experts in Cases Involving Allegations of Child Sexual Abuse*, 23 Fam.L.Q. 451, 463 (1989) (noting that behavioral science research does not demonstrate the existence of an accurate method of identifying an individual child as having been sexually abused); McCord, *supra*, at 67 (advocating that the

admissibility of expert opinion testimony be limited to explaining the complainant's unusual actions); Myers et al., *supra*, at 68 (identifying the utility of expert testimony on child sexual abuse syndrome to rehabilitate the credibility of victims whose behavior may appear self-impeaching).

### 3. Conclusion

The admissibility of child sexual abuse syndrome evidence will be primarily determined in the courts of this state in accordance with the provisions in the Indiana Rules of Evidence defining "relevant evidence," Evid.R. 401; declaring its general admissibility, Evid.R. 402; permitting exclusion due to the danger of unfair prejudice, Evid.R. 403; prohibiting opinions concerning witness truthfulness, Evid.R. 704(b); and, most particularly, prescribing the requirements for expert scientific testimony, Evid.R. 702.

Federal Rule of Evidence 702 was adopted as subsection (a) of the Indiana rule. Subsection (b) of the Indiana rule is unique in its express requirement that expert testimony must be based upon reliable scientific principles.

(a) If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

(b) Expert scientific testimony is admissible only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable.

Evid.R. 702.

The United States Supreme Court's *Daubert* decision, coincidentally handed down just weeks after Indiana's Rule 702(b) was adopted, interpreted Federal Rule of Evidence 702 as requiring that expert testimony "be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known," and as "establish[ing] a standard of evidentiary reliability." *Daubert*, —— U.S. at ——, 113 S.Ct. at 2795, 125 L.Ed.2d at 481. The concerns driving *Daubert* coincide with the express requirement of Indiana Rule of Evidence 702(b) that the trial court be satisfied

of the reliability of the scientific principles involved. Thus, although not binding upon the determination of state evidentiary law issues, the federal evidence law of *Daubert* and its progeny is helpful to the bench and bar in applying Indiana Rule of Evidence 702(b). Of particular relevance to our inquiry here are *Daubert*'s statements that "scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes," and that Federal Rule of Evidence 702 "requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Id.* at ——, 113 S.Ct. at 2796, 125 L.Ed.2d at 482.

■ Child sexual abuse syndrome evidence must satisfy the reliability requirement of Rule 702(b) as well as the Rule 403 balancing test.

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay or needless presentation of cumulative evidence.

Evid.R. 403. If determined to be sufficiently reliable to be eligible for admission into evidence as expert testimony, its probative value must also outweigh the danger that it will unfairly prejudice the defendant. As the U.S. Supreme Court pointed out in *Daubert*,

Conjectures that are probably wrong are of little use ... in the project of reaching a quick, final, and binding legal judgment—often of great consequence—about a particular set of events in the past. We recognize that in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations. That, nevertheless, is the balance that is struck by Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes.

*Daubert*, —— U.S. at ——, 113 S.Ct. at 2798, 125 L.Ed.2d at 485.

■ Under Indiana Evidence Rule 702(b), expert scientific testimony is admissible only if reliability is demonstrated to the trial

court. We agree with the Utah Supreme Court's observation in *Rimmasch* that reliability may be established either by judicial notice or, in its absence, by the proponent of the scientific testimony providing sufficient foundation to convince the trial court that the relevant scientific principles are reliable. *Rimmasch*, 775 P.2d at 403. This sort of inquiry is generally more appropriate for trial courts than for appellate resolution. While we, like the Utah Supreme Court, "do not mean to imply that [syndrome] testimony is unreliable as a matter of law," *Rimmasch*, 775 P.2d at 403, the reliability of such evidence for the purpose of proving abuse is at present extremely doubtful and the subject of substantial and widespread repudiation by courts and scientists. *Accord Rimmasch*, 775 P.2d at 403.

It is possible that foundational support may be discovered in the future which will expand the purposes for which such expert testimony may be deemed reliable. We echo the Mississippi Supreme Court in noting that "what should be emphasized about this view is that it renders dynamic the realm of expert opinion testimony. Should subsequent empirical research and scientific investigation yield a [diagnostic] child sexual abuse profile or syndrome." *Goodson*, 566 So.2d at 1146 n. 6, our trial courts may consider admitting that evidence for any use to which it may reliably be put.

■ Furthermore, we decline to distinguish between expert testimony which offers an unreserved conclusion that the child in question has been abused and that which merely uses syndrome evidence to imply the occurrence of abuse. Where a jury is confronted with evidence of an alleged child victim's behaviors, paired with expert testimony concerning similar syndrome behaviors, the invited inference—that the child was sexually abused because he or she fits the syndrome profile—will be as potentially misleading and equally as unreliable as expert testimony applying the syndrome to the facts of the case and stating outright the conclusion that a given child was abused. The danger of the jury misapplying syndrome evidence thus remains the same whether an expert expresses an explicit opinion that abuse has occurred or merely allows the jury to draw the final conclusion of abuse. Exclusion of such evidence is authorized by Indiana Rule of Evidence 403.

■ However, we recognize that, once a child's credibility is called into question, proper expert testimony may be appropriate. *Daubert* notes the importance of "a valid scientific connection *to the pertinent inquiry* as a precondition to admissibility." *Daubert*, —— U.S. at ——, 113 S.Ct. at 2796, 125 L.Ed.2d at 482 (emphasis added). Because research generally accepted as scientifically reliable recognizes that child victims of sexual abuse may exhibit unexpected behavior patterns seemingly inconsistent with the claim of abuse, such evidence may be permissible under Indiana Evidence Rule 702(a)'s authorization of "specialized knowledge [which] will assist the trier of fact to understand the evidence." Therefore, if the defense discusses or presents evidence of such unexpected behavior by the child, or if during trial testimony the child recants a prior allegation of abuse, a trial court may consider permitting expert testimony, if based upon reliable scientific principles, regarding the prevalence of the specific unexpected behavior within the general class of reported child abuse victims. To be admissible, such scientific evidence must assist the finder of fact in understanding a child's responses to abuse and satisfy the requirements of both Rule 702(b) and the Rule 403 balancing test.

We agree with the Arizona Supreme Court's assessment that when the relevant inquiry is the syndrome's reliability and probative value for rehabilitative and related purposes, "[s]uch evidence may harm defendant's interests, but we cannot say it is *unfairly* prejudicial; it merely informs jurors that commonly held assumptions are not necessarily accurate and allows them to fairly judge credibility." *Moran*, 728 P.2d at 251–52.

Transfer is granted. As to the issues addressed therein, the opinion of the Court of Appeals is summarily affirmed. We affirm, as did the Court of Appeals, the defendant's conviction for Child Molesting, a class D felony, and reverse his conviction for Child Molesting, a class C felony, and remand this

cause for a new trial on the latter charge consistent with this opinion.

SHEPARD, C.J., and DeBRULER and SELBY, JJ., concur.

SULLIVAN, J., dissents with separate opinion.

SULLIVAN, Justice, dissenting.

Cases of alleged child abuse provide a particular challenge for the criminal justice system.

> If trials are genuine searches for truth, that truth must be sought in light of society's modern understanding of children.... Adults who assume that their own perceptions, motivations, and fears are universal cannot empathize with children caught between the horrors of sexual abuse and the criminal justice system. Adults who doubt children because of false assumptions about their perception, memory, suggestibility, and truthfulness cannot fairly evaluate their testimony in the courtroom.

Billie W. Dziech and Charles B. Schudson, *On Trial: America's Courts and Their Treatment of Sexually Abused Children* 53 (1991). Expert testimony has proved to be helpful in meeting this challenge.

> Recognizing that most jurors will not have experience that allows for a fully informed evaluation of a child's behavior and credibility, courts have thus permitted experts to help juries by testifying in three areas: (1) factors affecting credibility of children, (2) factors affecting behavior of child sexual abuse victims, (3) interpretations of special forms of child communication.

*Id.* at 157.

I believe our rules of evidence provide a fair yet flexible regime for determining whether any particular expert testimony proffered on the subject of sexual abuse is admissible. Assuming that the proffered testimony is relevant [1] and will assist the jury in understanding the evidence or a fact at issue,[2] and that the witness is properly qualified as an expert [3] (issues not implicated by this case or by the majority opinion), the trial court must determine whether the scientific principles upon which the expert testimony rests are reliable.[4] As to the reliability of expert testimony concerning child sexual abuse accommodation syndrome and similar evidence, the majority sets general rules for the following three situations:

(1) Child sexual abuse accommodation syndrome evidence is presently [5] not scientifically reliable enough to permit an expert to offer "an unreserved conclusion that the child in question has been abused."

(2) Child sexual abuse accommodation syndrome is also presently not scientifically reliable enough to permit the use of expert testimony "merely ... to imply the occurrence of abuse."

(3) However, child sexual abuse accommodation syndrome is presently scientifically reliable enough to permit the use of expert testimony to assist the factfinder in understanding a child's response to abuse when, but only when, the defense asserts or implies that the alleged child victim's conduct was inconsistent with the claim of abuse, or if the child recanted a prior allegation of abuse.

As to situation (1), I certainly agree that an expert may not comment directly on whether the child has been sexually abused or whether the child has testified truthfully. Ind.Evidence Rule 704. But as to situation (2), the Court of Appeals correctly pointed out that our rule has been that expert testimony that a putative rape victim's behavior was consistent with that of one who had in fact been raped merely tended to show that the victim had been raped and was not a direct opinion that the victim was telling the

---

1. Ind.Evidence Rule 401.

2. Ind.Evidence Rule 702(a).

3. Ind.Evidence Rule 702(a).

4. Ind.Evidence Rule 702(b).

5. While the majority says that such evidence is not "unreliable as a matter of law," the majority would permit trial courts to consider admitting the evidence only if *future* empirical research and scientific investigation resolves present doubts about reliability.

truth. *Steward v. State* (1994), Ind.App., 636 N.E.2d 143, 146–47 (citing *Henson v. State* (1989), Ind., 535 N.E.2d 1189, 1192–93). I see no basis for having different rules for child sexual abuse and for rape. And I also think that banning expert testimony because the "danger of the jury misapplying [the evidence] remains the same whether an expert expresses an explicit opinion ... or merely allows the jury to draw the final conclusion" has very restrictive implications for expert testimony generally.

I acknowledge the majority's citation of *Daubert*'s observation that scientific evidence can be reliable for one purpose but not another, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, —— U.S. ——, ——, 113 S.Ct. 2786, 2796, 125 L.Ed.2d 469 (1993). It seems clear to me, however, that the purposes of the testimony in situations (2) and (3) are the same—to aid the jury in assessing the credibility of the child witness. While the former may be more prejudicial than the latter, that does not make the scientific principles upon which the former is based less reliable than the latter's.

I do not think we can say that the scientific principles upon which child sexual abuse accommodation syndrome is based are not reliable as direct evidence but are reliable as rebuttal evidence. In logic, either those principles are reliable for purposes of aiding the jury in assessing the child victim's credibility or they are not. The majority cites dozens of opinions where such evidence was found to be reliable, at least for rebuttal purposes, and I would hold that to the extent that that authority establishes its reliability for rebuttal evidence, it establishes it for direct evidence as well.

Once the trial court determines that expert testimony is admissible under Evidence Rule 702(b), the proffered testimony is still subject to challenge under Indiana Evidence Rule 403 which, as the majority points out, provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by consideration of undue delay or needless presentation of cumulative evidence.

It is here, rather than under the rubric of scientific or expert testimony, that I think the real battle over the admissibility of child sexual abuse accommodation syndrome should be fought in most cases. We recently observed that scientific evidence is subject to particular scrutiny under Evidence Rule 403. *Harrison v. State* (1995), Ind., 644 N.E.2d 1243, 1252 (quoting *Daubert*, —— U.S. at ——, 113 S.Ct. at 2798, and *Cornett v. State* (1983), Ind., 450 N.E.2d 498, 503). But whether any particular evidence violates Evidence Rule 403 is a matter first and foremost for the trial court to decide: we review only for an abuse of discretion. *Evans v. State* (1994), Ind., 643 N.E.2d 877, 880. While *Daubert*'s progeny suggest some heightened scrutiny of such determinations is appropriate when scientific evidence is involved, *In re: Paoli Railroad Yard PCB Litigation*, 35 F.3d 717, 749–750 (3d Cir.1994), *cert. denied sub nom. General Elec. Co. v. Ingram*, —— U.S. ——, 115 S.Ct. 1253 (1995), I agree with the analysis given this evidence in this case by Judge Najam and concur in his view that it was not erroneous for the trial court to admit Dr. Watson's testimony.[6] More generally, I would hold that, while Evidence rule 704 prohibits the use of child sexual abuse accommodation syndrome evidence in situation (1), the reliability test of Evidence Rule 702(b) applies in the same way to such evidence in both situations (2) and (3), and that the admissibility of such evidence under Evidence Rule 403 is committed to the sound discretion of the trial court.

I would make one final observation. In *Henson v. State, supra,* this court reversed the conviction of an appellant convicted of rape on grounds that he was denied due process of law when the trial court refused to permit him to introduce evidence that the putative victim's conduct was not consistent with that which would have been predicted were she suffering from rape trauma syndrome. *Henson*, 504 N.E.2d at 1193–94. I cannot avoid the conclusion that today's opinion prohibits a defendant from offering child

---

6. The majority does not explicitly conclude that Dr. Watson's testimony was erroneously admitted but that is the only inference I can draw from its opinion.

sexual abuse accommodation syndrome evidence in his own defense.

