## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 15 2015, 9:31 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

Brendan K. Lahey
South Bend, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Christina D. Pace
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Christian Ricker, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff,* | May 15, 2015 <br><br> Court of Appeals Case No. 71A03-1407-CR-266 <br><br> Appeal from the St. Joseph Superior Court <br><br> The Honorable Elizabeth Hurley, Judge <br><br> Cause No. 71D08-1209-FA-26 |

**Robb, Judge.**

# Case Summary and Issues

[1] Following a jury trial, Christian Ricker was convicted of two counts of Class A felony child molesting, one count of Class C felony child molesting, and one

count of Class D felony intimidation. On appeal, he raises two issues for review: (1) whether the admission of testimony concerning Child Abuse Accommodation Syndrome ("CAAS") constituted fundamental error; and (2) whether there is sufficient evidence to sustain Ricker's convictions. Concluding that the admission of testimony about CAAS did not amount to fundamental error and that sufficient evidence was presented to support Ricker's convictions, we affirm.

## Facts and Procedural History

In May of 2009, Ricker began a romantic relationship with L.S.'s mother. L.S. was seven years old at the time. Starting in June of 2009, Ricker began spending a few nights a week at their house. On occasion, Ricker watched L.S. and her siblings while L.S.'s mother was at work.

The first inappropriate contact between Ricker and L.S occurred during the summer between L.S.'s third and fourth years in school. Ricker brought her downstairs, sat on the couch next to her, and touched L.S.'s chest over her clothes. The next inappropriate contact occurred later that year after school had started. Ricker rubbed L.S.'s leg and crotch over her clothes while she was sitting on the living room couch. A third incident occurred approximately one month later when Ricker entered L.S.'s bedroom, grabbed her arm, and brought her downstairs to the living room. Ricker removed L.S.'s shorts and underwear, took his own clothes off, placed a "balloon" on his "private part," and had intercourse with her. Transcript at 278. This lasted for about five

minutes before L.S. kicked Ricker, grabbed her clothes, and went to her room. Before she left, Ricker told L.S. that he would hit her if she told anyone. The fourth instance of inappropriate contact occurred approximately one week later. L.S. was in the living room wearing shorts and a tank top. Ricker took his clothes off and removed L.S.'s shorts, placed a "balloon thing" on his "private," and put it inside her. Tr. at 286. Ricker stopped because L.S.'s mother came home.

[4] On December 23, 2011, L.S. disclosed the sexual abuse to her father's fiancée, Karagh Brennan. Brennan told L.S. it would be investigated. In May of 2012, L.S. opened up to Brennan again and disclosed additional abuse that had not been disclosed the first time.

[5] The investigation involved interviews between L.S. and Carolyn Hahn, an employee with the Child Abuse Service Investigation Education Center. Hahn is a child forensic interviewer at the Center with an undergraduate degree and masters work in elementary education. She has been a forensic interviewer since 1996 and has conducted over 5,000 interviews with alleged child abuse victims. Hahn has been trained in the use of CAAS, a system of clinical accommodations to help children struggling with child abuse. During Hahn's interview with L.S. on December 29, 2011, L.S. gave a partial disclosure to Hahn regarding her sexual abuse. On or about June 12, 2012, a second interview took place during which L.S. made additional disclosures about her sexual abuse.

On September 24, 2012, the State charged Ricker with three counts of Class A felony child molesting,[1] one count of Class C felony child molesting, and one count of Class D felony intimidation. A jury found him guilty of two counts of Class A felony child molesting, Class C felony child molesting, and Class D felony intimidation. On July 25, 2014, the trial court imposed an aggregate sixty-two year sentence. Ricker now appeals.

# Discussion and Decision

## I. Admission of CAAS Evidence

### A. Standard of Review

The trial court has broad discretion in ruling on the admissibility of evidence. *Washington v. State*, 784 N.E.2d 584, 587 (Ind. Ct. App. 2003). This court will reverse the trial court's ruling only if the admission of evidence was an abuse of that discretion. *Id.* An abuse of discretion involves a decision that is clearly against the logic and effect of the facts and circumstances before the court. *Huffines v. State*, 739 N.E.2d 1093, 1095 (Ind. Ct. App. 2000) (quotation omitted), *trans. denied*.

---

[1] Prior to trial, the State moved to dismiss one count of Class A felony child molesting. The trial court granted the motion and dismissed the count with prejudice.

## B. Preservation of the Alleged Error

Ricker claims that Hahn's testimony regarding the effects of CAAS was improper. Specifically, he argues that Hahn was not a qualified expert under Indiana Evidence Rule 702(a); the testimony about CAAS was scientific in nature and must be proven reliable under Rule 702(b); Hahn's testimony was impermissible vouching in violation of Rule 704(b); and the testimony was unfairly prejudicial and should have been excluded under Rule 403.

A claim of error in the admission of evidence is forfeited unless the appellant made a "contemporaneous objection at the time the evidence [was] introduced at trial . . . ." *Brown v. State*, 929 N.E.2d 204, 207 (Ind. 2010). Ricker's counsel failed to object to the use of CAAS evidence or Hahn's status as a qualified expert. However, late into Hahn's testimony on direct examination, Ricker did object to a question about whether L.S. showed signs of CAAS, and the trial court cautioned the State on that point. Ricker claims that this later objection should be sufficient to preserve all of his appellate challenges to Hahn's CAAS testimony. But "[t]he purpose of requiring a contemporaneous objection is to afford the trial court an opportunity to make a final ruling on the matter in the context [in] which the evidence is introduced." *Orr v. State*, 968 N.E.2d 858, 860 (Ind. Ct. App. 2012). Here, Ricker's failure to specifically object to Hahn's qualifications and the general use of CAAS evidence renders those issues forfeited on appeal.

Regardless of his failure to object, Ricker claims that the trial court committed fundamental error by allowing the testimony. If a timely objection is not made

at trial, then only review for fundamental error is allowed. *Clark v. State,* 915 N.E.2d 126, 131 (Ind. 2009). "Fundamental error is an error that makes a fair trial impossible or constitutes clearly blatant violations of basic and elementary principles of due process presenting an undeniable and substantial potential for harm." *Id.* We will review the admission of the CAAS testimony for fundamental error.

## C. Evidence of CAAS and Fundamental Error

[11] With respect to CAAS, our supreme court has said "the reliability of such evidence for the purpose of proving abuse is at present extremely doubtful and the subject of substantial and widespread repudiation by courts and scientists." *Steward v. State*, 652 N.E.2d 490, 499 (Ind. 1995). Consequently, the court held in *Steward* that CAAS evidence cannot be used to prove a child has been sexually abused. *Id.* That said, our supreme court indicated that if a child's credibility is called into question by the defendant, then testimony about the effects of CAAS may be appropriate to rebut an attack on the child's credibility. *Id*.

> Because research generally accepted as scientifically reliable recognizes that child victims of sexual abuse may exhibit unexpected behavior patterns seemingly inconsistent with the claim of abuse, such evidence may be permissible under Indiana Evidence Rule 702(a)'s authorization of "specialized knowledge [which] will assist the trier of fact to understand the evidence." Therefore, *if the defense discusses or presents evidence of such unexpected behavior by the child . . . a trial court may consider permitting expert testimony, if based upon reliable scientific principles, regarding the prevalence of the specific unexpected behavior within the general class of reported child abuse victims.*

*Id.* (alteration in original) (emphasis added).

[12] The record shows that Ricker repeatedly attacked L.S.'s credibility during his cross-examination and also called her mother to testify and contradict L.S.'s testimony. The State contends that testimony concerning the potential effects of CAAS was presented in an attempt to rehabilitate L.S.'s credibility, and the record supports the State's explanation. Our supreme court has acknowledged that rehabilitating the credibility of the alleged victim is a potentially acceptable use of CAAS evidence. Where Ricker's defense strategy opened the door to the use of CAAS evidence for that purpose, and the State sought to submit it for that purpose, we cannot conclude that admission of that evidence amounted to fundamental error.

## II. Sufficiency of the Evidence

### A. Standard of Review

[13] When reviewing the sufficiency of evidence, this court does not reweigh the evidence or assess the credibility of witnesses. *McHenry v. State*, 820 N.E.2d 124, 126 (Ind. 2005). When confronted with conflicting evidence, we consider it in the light most favorable to the conviction. *Walker v. State*, 998 N.E.2d 724, 726 (Ind. 2013). This court will affirm the conviction unless "no reasonable fact-finder" could have found the defendant guilty beyond a reasonable doubt. *Drane v. State*, 867 N.E.2d 144, 146 (Ind. 2007). A conviction may stand on a minor witness's uncorroborated testimony. *Nelson v. State,* 525 N.E.2d 296, 297 (Ind. 1988).

"Within the narrow limits of the 'incredible dubiosity' rule, a court may impinge upon a jury's function to judge the credibility of a witness." *Love v. State*, 761 N.E.2d 806, 810 (Ind. 2002). "If a sole witness presents inherently improbable testimony and there is a complete lack of circumstantial evidence, a defendant's conviction may be reversed." *Id.* "Application of this rule is limited to cases . . . where a sole witness presents inherently contradictory testimony which is equivocal or the result of coercion and there is a complete lack of circumstantial evidence of the appellant's guilt." *White v. State*, 706 N.E.2d 1078, 1079-80 (Ind. 1999) (citation omitted). We apply the incredible dubiosity rule only in rare circumstances, and "the standard to be applied is whether the testimony is so incredibly dubious or inherently improbable that no reasonable person could believe it." *Love*, 761 N.E.2d at 810.

## B. Incredibly Dubious Testimony

Ricker claims L.S. gave incredibly dubious testimony that could not have allowed a reasonable trier of fact to find all of the elements of child molestation and intimidation were proved beyond a reasonable doubt.

L.S. testified that on four separate occasions she was touched by Ricker and that sexual intercourse occurred on two of those occasions. When describing the occurrences, she used language that a nine-year old child would use. She described the occurrence using words such as "private," "crotch," "thing," and "balloon thing," which are all terms that a child would use when referring to

such an incident. Tr. at 276-78. L.S.'s testimony was coherent and presented a believable narrative of events.

[17] Ricker complains of alleged inconsistencies between L.S.'s pre-trial statements and her trial testimony. However, any such inconsistency is irrelevant to the question of whether her testimony was incredibly dubious because the rule concerns only *testimony* that is inherently contradictory, not conflicting statements made outside of trial. *Reyburn v. State*, 737 N.E.2d 1169, 1171 (Ind. Ct. App. 2000), *trans. denied*.

[18] Ricker also claims L.S's testimony was incredibly dubious because her mother offered some conflicting testimony. This is an invitation for this court to reweigh evidence, which we will not do. Inconsistencies in testimony given by various witnesses is a matter for the jury to evaluate. *Murray v. State*, 761 N.E.2d 406, 409 (Ind. 2002). The inconsistencies in the testimony given by different witnesses do not trigger the incredible dubiosity rule. *See Berry v. State*, 703 N.E.2d 154, 160 (Ind. 1998). In sum, we conclude that L.S.'s testimony was not incredibly dubious.

[19] L.S. testified that Ricker touched her on four separate occasions, two of which culminated in sexual intercourse, and once told her not to tell or he would hit her. Her testimony is sufficient to sustain Ricker's convictions for child molesting and intimidation.

# Conclusion

[20] We hold that no fundamental error occurred in the presentation of CAAS evidence for the purpose of rehabilitating L.S.'s credibility and conclude L.S.'s testimony was sufficient to support the jury's verdict. Therefore, we affirm Ricker's convictions.

[21] Affirmed.

Bailey, J., and Brown, J., concur.