Paul **CARNAHAN**, Appellant–Defendant,

v.

**STATE of Indiana, Appellee–Plaintiff.**

No. 79A02–9605–CR–304.

Court of Appeals of Indiana.

June 26, 1997.

Charles R. Deets, III, Linda L. Cory, Hide Sandy Deets & Kennedy, Lafayette, for appellant.

Jeffrey A. Modisett, Attorney General, Rafal Ofierski, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Paul Carnahan appeals his conviction for Battery,[1] a Class A misdemeanor. Specifically, he claims that the trial court erred by admitting expert testimony regarding Battered Women's Syndrome (BWS) to explain why his wife recanted her prior allegations of abuse.

### FACTS

On the evening of November 10, 1995, Carnahan and his wife, Carla, had an argument regarding some over-due payments on their property, during which Carnahan struck Carla's face, causing her injuries. After the altercation, Carla filed a report with the Tippecanoe County Police Department. In her report, Carla indicated that Carnahan had punched her in the stomach, struck her in the face and threatened to kill her. Record at 145–46, 196–97. The following day, a police officer spoke with Carnahan regarding the altercation and took pictures of Carla's injuries. As a result of the investigation, Carnahan was charged with battery, a class A misdemeanor and Intimidation,[2] a Class D felony.

At trial, the State called Carla to testify regarding the alleged incident. However, Carla recanted her earlier allegation and instead testified that although she and Carnahan had argued on November 10, 1995, he never hit her or threatened her. R. at 145, 150, 198–200. Carla further testified that a family member had pressured her into filing a false report of abuse and that her injuries occurred when an old car radio fell out of a

---

1. IND. CODE § 35–42–2–1.

2. IND. CODE § 35–45–2–1(b).

closet and struck her in the face. R. at 148, 179.

In response to Carla's testimony, the State called an expert on domestic violence, Carrie Costello, Director of the YWCA Domestic Violence Intervention and Prevention Program, to explain why Carla changed her story. Specifically, Costello testified, over Carnahan's objections, that abusers and their victims go through a three-part cycle of violence, which includes a tension building phase, a battering phase and finally, a reconciliation phase in which the batterer promises never to strike the victim again. R. at 236–37. Costello then explained that battered women often remain with their husbands, because of financial concerns, lack of housing, fear of physical harm in retaliation for leaving, emotional attachment and religious mandates which discourage divorce or separation. R. at 240–41.

Following the jury trial, Carnahan was convicted of battery, a class A misdemeanor and sentenced to one year imprisonment. However, the court suspended Carnahan's sentence and placed him on probation for one year, on the condition that he, among other things, participate in a domestic violence counseling program. Carnahan now appeals.

### DISCUSSION AND DECISION

Carnahan contends that the trial court erred by permitting expert testimony regarding BWS, particularly involving the cycle of violence and the reasons battered women do not leave their husbands, to explain why Carla recanted her earlier allegation of abuse. Specifically, Carnahan claims this evidence was irrelevant to the proceeding since there were no facts showing that Carla was a battered woman. Alternatively, Carnahan argues that even if the evidence was relevant, it was misleading and should have been excluded under Ind. Evidence Rule 403.

■ A trial court is accorded discretion in ruling on the relevancy and admissibility of expert testimony. *Henson v. State*, 535 N.E.2d 1189, 1192 (Ind.1989); *Bates v. State*, 650 N.E.2d 754, 756 (Ind.Ct.App.1995). We will not reverse a trial court's decision absent an abuse of discretion, that is, where the

decision is clearly against the logic and effect of the facts and circumstances before it. *Shaffer v. State*, 453 N.E.2d 1182, 1186 (Ind. Ct.App.1983).

■ Relevant evidence is that which makes the "existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ind. Evidence Rule 401. All relevant evidence is admissible, even if only marginally relevant. Evid.R. 402; *Bates*, 650 N.E.2d at 756. Thus, in determining whether evidence is relevant and admissible, this court must determine whether the evidence tends to prove or disprove a material fact in the case or sheds any light on the guilt or innocence of the accused. *Tynes v. State*, 650 N.E.2d 685, 687 (Ind.1995).

Although our research reveals no case which addresses the admissibility of BWS to explain why a woman recants her prior allegations of abuse, our courts have recently discussed the relevancy of BWS in other contexts. For example, in *Isaacs v. State*, 659 N.E.2d 1036, 1040 (Ind.1995), *cert. denied*, —— U.S. ——, 117 S.Ct. 205, 136 L.Ed.2d 140 (1996), our supreme court held that expert testimony regarding BWS was relevant to refute the claim of a defendant, on trial for the murder of his wife, that he had an amicable relationship with his wife prior to her death. The supreme court explained that evidence of BWS was properly admitted to refute the defendant's characterization of their relationship and to cast doubt on his assertion that he did not intend to kill his wife. *Id.* at 1041. Because the evidence had a direct bearing on the defendant's guilt or innocence, it was relevant. *Id.*

Similarly, in *Barrett v. State*, 675 N.E.2d 1112, 1116 (Ind.Ct.App.1996), *trans. denied*, this court held that evidence of BWS was relevant to the question of whether a defendant charged with neglect of a dependant, knowingly or intentionally neglected her child. In making our determination, we specifically rejected the State's contention that the admission of evidence of BWS was only relevant in cases in which the defendant argued self-defense and concluded that evidence of BWS is admissible if it is relevant to

an issue before the court. *Id.* at 1117 (citing *Isaacs,* 659 N.E.2d at 1041).

■ In light of these opinions, we now consider the facts of this case. Here, the State offered evidence of the cycle of violence and the reasons victims stay with their abusers to explain why Carla, who had previously filed a written report claiming that Carnahan had abused her, recanted her allegations at trial. This evidence, if accepted by the jury, could show that at the time Carla testified, she was in a stage of reconciliation with Carnahan or was apprehensive about leaving him. Thus, the BWS evidence makes her prior allegations more credible. As a result, the BWS evidence was directly relevant to Carla's credibility which, because she testified, was an issue at trial.

■ However, even if evidence is relevant, where an expert testifies, a proper foundation must be laid before the evidence is ruled admissible. *Henson,* 535 N.E.2d at 1191. A proper foundation includes a showing that the expert has the requisite knowledge, skill, education and experience on which to base her opinion and that the facts upon which the expert testifies have already been placed into evidence. *Id.* 1191–92. It is upon this latter part of the foundation that Carnahan predicates error. Specifically, he contends that Costello's testimony regarding BWS was irrelevant because there were no facts presented prior to her testimony which would suggest that Carla was a battered woman. Notwithstanding Carnahan's assertion, the record reveals that the State had introduced evidence which sufficiently demonstrated that Carla was a battered woman. Specifically, the State offered Carla's testimony that she had previously stayed at a battered women's shelter, police reports of Carla's alleged abuse and the police photos showing the injuries on Carla's face. R. at 155–59, 188, 196–97. Thus, a proper foundation was laid for Costello's testimony.

Even assuming the testimony was relevant, Carnahan, nevertheless, argues that it

is still inadmissible because it is substantially misleading pursuant to Evid.R. 403, which provides that relevant evidence is inadmissible if its "probative value is substantially outweighed by the danger of ... misleading the jury." Specifically, Carnahan contends that the jury used the BWS testimony to infer that Carnahan committed battery on the day in question because Carla fit the profile of a battered woman, instead of for the limited purpose of explaining why she recanted her prior allegations.

In support of his argument, Carnahan cites *Steward v. State,* 652 N.E.2d 490 (Ind.1995). In *Steward,* our supreme court held that evidence of child sexual abuse syndrome was not admissible to prove that child abuse occurred because the evidence was misleading under Evid.R. 403. *Id.* at 499. In its holding, the court stated that when a jury is confronted with expert testimony regarding child sexual abuse syndrome, as well as evidence of the child's behavior patterns, an inference is created that the child was sexually abused because the child fits the profile. *Id.* Carnahan contends that the holding in *Steward* is equally applicable to cases involving expert testimony regarding BWS. We disagree.

The holding in *Steward* concerned expert testimony regarding child sexual abuse syndrome, not BWS. This distinction is notable because the court in *Steward* stated that the reliability of child sexual abuse syndrome was "at present extremely doubtful and the subject of substantial and widespread repudiation." *Id.* at 499. In contrast, BWS has been accepted in Indiana as a valid scientific theory. *See Barrett,* 675 N.E.2d at 1115, n. 4 (BWS is accepted as valid scientific theory in Indiana and numerous other jurisdictions). Additionally, unlike the present case, the expert testimony in *Steward* was not offered on the issue of the child/witness' credibility, but rather, was offered to prove that a child had been abused. *Steward,* 652 N.E.2d at 499. Thus, we find *Steward* inapplicable to the present case.[3]

**3.** Even if *Steward* were applicable, its holding does not appear to support Carnahan's contention that evidence of BWS should be excluded as misleading when offered on the issue of a witness' credibility. In *Steward,* the court noted that in cases where a witness' credibility is called into question, evidence of child sexual abuse syndrome may be admitted if proven sufficiently

In the instant case, the trial court did not abuse its discretion in admitting the evidence of BWS. Here, BWS was offered for the limited purpose of attacking Carla's credibility, not to show that Carnahan battered Carla. In fact, Costello only testified after Carla admitted having changed her story. Further, the trial court stated early on in Costello's testimony after Carnahan first objected to her testimony, that Costello's testimony was being admitted because of the credibility of [Carla's] statements and consistency [sic] between those statements. R. at 238. As a result, we cannot say that the testimony's probative value was outweighed by the danger of misleading the jury. The trial court did not abuse its discretion in admitting expert testimony of BWS.

Judgment affirmed.

NAJAM, J., concurs.

SULLIVAN, J., concurs with opinion.

SULLIVAN, Judge, concurring.

The prosecutor specifically conceded that Ms. Costello, the expert witness, stated that she could not venture an opinion as to whether Ms. Carnahan was a victim of physical violence. To the extent, therefore, that Costello's testimony could be construed as indicating such fact, it would be error to allow it to be considered by the jury. It is clear, however, that the Costello evidence was introduced solely to explain why a woman like Carnahan might, as did Ms. Carnahan, refuse to press charges or might deny that a battery ever took place. In other words it bears upon her credibility with respect to her denial of the battery. For this reason I can agree with that portion of the majority opinion which distinguishes *Steward v. State* (1995) Ind., 652 N.E.2d 490, upon grounds that in *Steward*, the expert testimony "was not offered on the issue of the child/witness' credibility, but rather, was offered to prove that a child had been abused." Op. at 1167.

However, in many, if not most, cases, BWS evidence is just as susceptible to misuse and misinterpretation as is the child sexual abuse

syndrome evidence discussed in *Steward v. State, supra.* Other than in self-defense cases, the evidence will most likely come in under the guise of explaining the victim's behavior, e.g., why she kept going back to the abuser; why she now denies that abuse took place, etc. But in reality the tendency is to take that evidence and to conclude that because the alleged victim fits the profile of a battered woman, it is more likely than not that she was the victim of a battery with reference to the charged crime. It is this danger which *Steward v. State* cautions against and seeks to prevent. Accordingly, I would limit BWS evidence in much the same way expert testimony is limited in child abuse cases.

In this regard I fail to distinguish between child sexual abuse syndrome evidence and battered women syndrome evidence with regard to whether the concepts are scientifically valid and as to whether the evidence is likely to assist the trier of fact is assessing the issues of the case, so long as the evidence is not used to imply that the alleged act took place.

Subject to these stated concerns, I concur.

---

reliable and used for the limited purpose of explaining why a child recants a prior allegation of abuse. *Steward*, 652 N.E.2d at 499. Thus, the

holding in *Steward* supports the use of BWS under these limited circumstances.