# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 01 2020, 10:05 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Bruce W. Graham
Graham Law Firm P.C.
Lafayette, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Tyler G. Banks
Supervising Deputy Attorney General
Indianapolis, Indiana

## IN THE
## COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Garrett Bridges Chaffin, <br> *Appellant-Defendant,* <br><br> v. <br><br> State of Indiana, <br> *Appellee-Plaintiff.* | April 1, 2020 <br><br> Court of Appeals Case No. 19A-CR-1286 <br><br> Appeal from the Tippecanoe Circuit Court <br><br> The Honorable Sean M. Persin, Judge <br><br> Trial Court Cause No. 79C01-1903-F1-4 |

**Barteau, Senior Judge.**

# Statement of the Case

Garrett Chaffin appeals his convictions of attempted murder, a Level 1 felony,[1] and two counts of invasion of privacy, both Class A misdemeanors.[2] We affirm.

# Issues

Chaffin presents three issues for our review, which we restate as:

I. Whether the trial court violated Chaffin's right to a speedy trial.

II. Whether the trial court erred in allowing the State to amend the charging information to add counts of aggravated battery, attempted murder, and rape.

III. Whether the trial court erred in allowing testimony from an expert witness on domestic violence.

# Facts and Procedural History

In early April 2018, Cassandra Davis allowed Chaffin to move into her residence. She had known him since they were children. They had previously dated, and when Chaffin moved in, the two resumed their relationship.

---

[1] Ind. Code §§ 35-42-1-1 (2017) (murder), 35-41-5-1 (2014) (attempt).

[2] Ind. Code § 35-46-1-15.1 (2017).

[4] Chaffin became controlling and violent toward Davis "immediately" after moving in, and his behavior escalated in the weeks that followed. Tr. Vol. 2, p. 119. He monitored her use of social media websites and accused her of talking to other people. Eventually, Chaffin took Davis' phone and broke it. After he broke her phone, he repeatedly claimed that she had another phone and searched her residence for it.

[5] Chaffin also regularly struck Davis. He hit her in the face and on the top of her head, her legs, and her ribs. In addition, Chaffin repeatedly manually strangled Davis on her neck or put his hand over her nose and mouth, thus preventing her from breathing, until she lost consciousness.

[6] During one three-day period prior to April 14, Chaffin suffocated Davis until she lost consciousness "over and over again," approximately ten times. *Id.* at 123. During one incident, Chaffin wrapped his hands around her neck and lifted her off the floor until she lost consciousness. This lengthy period of beatings and suffocations resulted in Davis feeling pain all over her body, but especially her head and her neck. She also felt exhausted and terrified. At one point, Chaffin forced Davis to make a statement, which he recorded, in which he directed her to falsely state that another person had beaten her.

[7] Davis was reluctant to try to leave her residence because she feared that Chaffin would not let her go. Finally, after Chaffin fell asleep one day, she crawled out of a bathroom window and went to a neighbor's house, where she called 911. Officer Zachary Johnson was dispatched to the scene, along with Paramedic

Douglas Maish and other personnel. Officer Johnson noted Davis had bruises on her neck and face. She appeared to be exhausted and had trouble standing. Maish observed that Davis was "very upset" and had multiple bruises all over her body. Tr. Vol. 3, p. 59. Davis told Maish that she hurt all over and had been kicked and struck repeatedly. Maish and his partner took Davis to a hospital.

[8] Davis told the police and the emergency room doctor that Chaffin had attacked her. She had to return to the hospital several times over the next few days because she continued to have dizzy spells and headaches. A nurse examined Davis six days after she had called 911. Davis still had a hoarse voice and multiple bruises on her neck, chin, arms, legs, and behind an ear.

[9] On April 18, 2018, the State charged Chaffin with various offenses, plus an habitual offender enhancement, arising out of his attacks on Davis. That same day, the State sought and obtained from the trial court an order of protection barring Chaffin from contacting Davis.

[10] On April 23, 2018, Chaffin's mother arrived at Davis' residence. Chaffin's mother had Chaffin on her telephone, calling from jail, and asked Davis to speak with him. Davis initially refused to talk with him, noting she had a restraining order against him, but she stated she could hear him speak. Chaffin told her she needed to fix the situation and warned her not to "f**k with" him. State's Ex. 25 at 13:15. In the weeks that followed, Chaffin's mother and Davis

had many conversations by telephone. We discuss their conversations in more detail below.

[11] Meanwhile, on June 22, 2018, the State dismissed the case and refiled charges under a new cause number. The trial court, by a magistrate, held an initial hearing in the refiled case on June 26. Chaffin, who did not yet have counsel, orally requested a speedy trial. The magistrate denied his request, stating as follows:

> Alright on the fast and speedy trial you do have the right to request that but the court is going to require those requests to be made in writing so I'm going to deny the oral request but that is not saying that you cannot file a written request with Judge Persin on this cause number. You can write into court the judge will then deal with the written request once that's filed.

Supp. Tr. p. 13. The court also appointed counsel to represent Chaffin.

[12] After the initial hearing, the trial court issued an order that stated, in relevant part: "The defendant orally requests a fast and speedy trial, the Court denies defendant's oral request. The Court further advises the defendant that for the Court to consider such motions they must be made appropriately in writing." Appellant's App. Vol. II, p. 60.

[13] On June 28, 2018, an attorney filed an appearance on behalf of Chaffin. On July 2, Chaffin filed a pro se letter requesting a fast and speedy trial. On July 5, the trial court issued an order denying Chaffin's pro se request, noting that Chaffin was represented by counsel and all motions "shall be made through

counsel." *Id.* at 74.  Chaffin's counsel did not subsequently file a request for a speedy trial.

[14] On September 17, 2018, the State filed with the court a supplemental discovery disclosure, indicating that the prosecutor reserved the right to call Caryn Burton, a domestic violence expert, to testify at trial.  On September 19, Chaffin filed a motion to strike Burton as a witness.  That same day, the trial court issued an order stating the following:

> The Court receives Motion to Strike State's Witness.  If this case proceeds to trial on October 9, 2018, the State may not call Caryn Burton, who was not disclosed prior to the final Pre-Trial Conference.  If the case is congested, the State may call Ms. Burton.
>
> To the extent Defendant moves to strike any witness who provide [sic] general testimony regarding victims of domestic violence, said motion is denied.  Defendant must make specific and timely objections with regard to any such testimony at trial.

*Id.* at 95.  The court subsequently rescheduled the trial due to calendar congestion.

[15] On January 29, 2019, the State filed a motion to amend the information by adding a new count:  aggravated battery, a Level 3 felony.  Chaffin filed an objection.  The court granted the State's motion after a hearing.

[16] On February 15, the State filed another motion to amend the information, this time to add two more counts, specifically attempted murder, a Level 1 felony, and rape, a Level 3 felony.  Chaffin objected to the State's motion.  After

several hearings, the court granted the State's request and offered Chaffin a continuance of the trial to allow him more time to prepare. Chaffin, by counsel and in his own direct statement, rejected the court's offer. After the amendment, the trial court clerk assigned a new cause number to the case: 79C01-1903-F1-4.

[17] On April 8, 2019, the State filed a final motion to amend the charging information as to a count of invasion of privacy. Chaffin did not object, and the court granted the motion. At that point, the case was scheduled for trial, and the State's charges against Chaffin were as follows:

| | |
|---|---|
| Count 1: | Domestic Battery Resulting in Serious Bodily Injury (Level 5 felony) |
| Count 2: | Strangulation (Level 6 felony) |
| Count 3: | Intimidation (Level 6 felony) |
| Count 4: | Criminal Confinement (Level 6 felony) |
| Count 5: | Domestic Battery (Class A misdemeanor) |
| Count 6: | Invasion of Privacy (Class A misdemeanor) |
| Count 7: | Invasion of Privacy (Class A misdemeanor) |
| Count 8: | Aggravated Battery (Level 3 felony) |
| Count 9: | Attempted Murder (Level 1 felony) |
| Count 10: | Rape (Level 3 felony) |

*Id.* at 164. The State had also filed a habitual offender enhancement, to be tried in a separate phase.

[18] The trial court presided over a jury trial on April 9, 10, and 11, 2019. Burton testified on behalf of the State, over Chaffin's objection. After the State rested, the prosecutor asked the court to dismiss the charges of intimidation and rape. The court granted the State's motion.

[19] The jury determined Chaffin was guilty of Level 5 domestic battery, strangulation, criminal confinement, Class A misdemeanor domestic battery, both counts of invasion of privacy, aggravated battery, and attempted murder. Next, the court presided over a bench trial as to the habitual offender enhancement. The Court determined Chaffin was an habitual offender.

[20] The trial court held a sentencing hearing on May 22, 2019. The court vacated all convictions except for the two counts of invasion of privacy and the count of attempted murder, citing double jeopardy concerns. The court vacated the habitual offender determination for the same reason. Next, the court imposed a sentence upon the three convictions, and this appeal followed.

# Discussion and Decision

## I. Speedy Trial and Discharge

[21] Chaffin argues that he is entitled to reversal of his convictions because he requested a speedy trial orally and in writing, and the trial court failed to hold the trial within seventy days of his requests. The right of an accused to a speedy trial is guaranteed by the Sixth Amendment to the United States Constitution and by article I, section 12 of the Indiana Constitution. *Clark v. State*, 659

N.E.2d 548, 551 (Ind. 1995). An incarcerated defendant's speedy trial right is implemented by Indiana Criminal Rule 4(B)(1), which provides:

> If any defendant held in jail on an indictment or an affidavit shall move for an early trial, he shall be discharged if not brought to trial within seventy (70) calendar days from the date of such motion, except where a continuance within said period is had on his motion, or the delay is otherwise caused by his act, or where there was not sufficient time to try him during such seventy (70) calendar days because of the congestion of the court calendar. Provided, however, that in the last-mentioned circumstance, the prosecuting attorney shall file a timely motion for continuance as set forth in subdivision (A) of this rule. Provided further, that a trial court may take note of congestion or an emergency without the necessity of a motion, and upon so finding may order a continuance. Any continuance granted due to a congested calendar or emergency shall be reduced to an order, which order shall also set the case for trial within a reasonable time.

[22] Our standard of review is as follows:

> When we review Criminal Rule 4 claims, we review questions of law *de novo*, and we review factual findings of congestion or emergency for clear error. Under this standard, we consider the probative evidence and reasonable inferences supporting the judgment, without reweighing the evidence or assessing witness credibility, and reverse only if we are left with a firm conviction that a mistake was made.

*Roper v. State*, 79 N.E.3d 907, 910 (Ind. Ct. App. 2017) (citations omitted).

[23] In *McGowan v. State*, 599 N.E.2d 589, 591 (Ind. 1992), McGowan orally requested a speedy trial during an arraignment hearing, and the magistrate

required him to file a written motion. The Indiana Supreme Court determined the magistrate was authorized to require a written submission, citing Indiana Trial Rule 7(B), which allows a court to order an oral request for relief to be submitted by written motion. The Court further determined the seventy-day period set forth in Criminal Rule 4(B) did not begin to run until McGowan, by counsel, later filed a written request for a speedy trial.

[24] In this case, the trial court clerk assigned Chaffin's case a new cause number after the State filed additional charges, and a magistrate held a new initial hearing. During the hearing, Chaffin orally requested a speedy trial. The magistrate acknowledged Chaffin's right to request a speedy trial but required him to submit the request via a written motion. Pursuant to the Indiana Supreme Court's holding in *McGowan*, the magistrate's instruction to file a written motion did not violate Chaffin's right to a speedy trial. Further, Chaffin's oral request did not begin the seventy-day period set forth in Criminal Rule 4(B).

[25] Next, Chaffin submitted a pro se written motion for speedy trial after his attorney had filed an appearance. In *Jenkins v. State*, 809 N.E.2d 361, 366 (Ind. Ct. App. 2004), *trans. denied*, Jenkins filed a pro se motion for a speedy trial. At the time of filing, the trial court had appointed counsel for Jenkins, but counsel had not yet filed an appearance. The *Jenkins* court concluded that the trial court was not required to act upon Jenkins' pro se motion because he was represented by counsel.

[26] The circumstances in this case are even stronger than the circumstances in *Jenkins*, because Chaffin's counsel had been appointed and had filed an appearance when Chaffin filed his pro se request for a speedy trial. Per the holding in *Jenkins*, the trial court was not obligated to act upon Chaffin's pro se motion, and his filing of the motion did not begin the seventy-day speedy trial period.

[27] As a result, it was Chaffin's counsel's decision whether to request a speedy trial. During a February 22, 2019 pretrial hearing, Chaffin's counsel told the court he "strategically decided not to push speedy trial in this case because [he] wanted to see where the alleged victim was going to be." Tr. Vol. 2, p. 26.

[28] Even if Chaffin's pro se verbal and written requests for a speedy trial were valid and caused Rule 4(B)'s seventy-day period to begin running, he has failed to demonstrate reversible error. It is well established that a defendant must maintain a position reasonably consistent with the request for a speedy trial and must object, at the earliest opportunity, to a trial setting that is beyond the seventy-day time period. *Hill v. State*, 777 N.E.2d 795, 797-98 (Ind. Ct. App. 2002), *on reh'g*. If a defendant seeks or acquiesces in a delay that results in a later trial date, the time limitations set by Criminal Rule 4 are extended by the length of such delays. *Vermillion v. State*, 719 N.E.2d 1201, 1204 (Ind. 1999).

[29] If Chaffin's oral request for a speedy trial had been valid, the seventy-day period would have elapsed on September 4, 2018. If Chaffin's written request for a speedy trial had been valid, the seventy-day period would have elapsed on

September 10, 2018. The trial court held a pretrial hearing on August 10, 2018,[3] and, on August 14, 2018, the court issued an order scheduling the jury trial for October 9, 2018, well outside either seventy-day period. There is no evidence that Chaffin objected to the trial setting. Subsequently, the trial court issued a series of orders repeatedly rescheduling the trial due to congestion. Chaffin did not object to those orders, either. Chaffin's failure to object resulted in waiver of any right to a speedy trial, and he has failed to demonstrate error on this issue.

## II. Amendment of Charging Information

[30] Chaffin argues the trial court erred in allowing the State to amend the charging information to add charges of aggravated battery, attempted murder, and rape. He claims the State's amendments were late and being forced to defend himself against the amendments deprived him of due process of law under the federal constitution.

[31] In general, the State may amend an indictment in matters of substance "at any time . . . before the commencement of trial . . . if the amendment does not prejudice the substantial rights of the defendant." Ind. Code § 35-34-1-5(b) (2014). A defendant's substantial rights include "a right to sufficient notice and

---

[3] A transcript of that hearing has not been included in the record.

an opportunity to be heard regarding the charge." *Gaby v. State*, 949 N.E.2d 870, 874 (Ind. Ct. App. 2011).

[32] The State argues Chaffin waived this issue for appellate review by failing to request continuances after the trial court overruled his objections to the State's amendments. We agree. When a trial court permits a late amendment to the charging information, "the court shall, upon motion by the defendant, order any continuance of the proceedings which may be necessary to accord the defendant adequate opportunity to prepare the defendant's defense." Ind. Code § 35-34-1-5(d). The Indiana Supreme Court has determined that once a defendant's objection to an amendment has been overruled, the defendant must request a continuance to preserve the issue for appeal. *See Haymaker v. State*, 667 N.E.2d 1113, 1114 (Ind. 1996). The continuance requirement applies even if a defendant has requested a speedy trial. *See id.* (explaining that a defendant's motion for a speedy trial "does not negate waiver").

[33] In this case, Chaffin filed an objection after the State moved to amend the information to add a charge of aggravated battery. On February 8, 2019, the trial court held a hearing on the issue. The court determined that it would permit the amendment. Chaffin did not request a continuance.

[34] The State subsequently moved to add the charges of rape and attempted murder. On February 22, 2019, the court held a hearing on the State's motion. Chaffin again objected, claiming the amendment "completely and substantially changes not only the defense strategy but also how everything interplays." Tr.

Vol. 2, p. 23. The trial court noted that if it granted the motion to amend, it could grant a continuance to Chaffin. Chaffin, by counsel, specifically stated, "we do not want a continuance." *Id.* at 31. To the contrary, Chaffin stated he would object to a continuance.

[35] On February 26, 2019, the trial court issued an order granting the State's motion to amend. The order further stated that the court would grant a continuance of the trial if Chaffin filed a motion prior to March 15, 2019. Chaffin did not file a motion for continuance.

[36] The court addressed the State's amendments again at a March 15 hearing, emphasizing that it would continue the trial if Chaffin asked. Chaffin, by counsel, declined. Later in the hearing, the judge asked Chaffin directly if he wanted a continuance, and Chaffin declined.

[37] Under these circumstances, Chaffin not only failed to request a continuance, he affirmatively rejected the court's repeated offers of a continuance. He has failed to preserve for appellate review his challenges to the amendments. *See Haymaker*, 667 N.E.2d at 1114 (defendant waived amendment of information; he did not request a continuance because he wanted to proceed with trial).

[38] Waiver notwithstanding, Chaffin would not have prevailed on his challenge to the State's amendments of the charging information to add charges of aggravated battery, rape, and attempted murder. "The substantial rights of the defendant are not prejudiced if: (1) a defense under the original information would be equally available after the amendment, and (2) the defendant's

evidence would apply equally to the information in either form." *Gaby*, 949 N.E.2d at 874.

[39] As to the charge of aggravated battery, Chaffin argued in passing that the addition of that charge affected "defense preparation," Tr. Vol. 2, p. 11, but his argument focused in substance on the unfairness of the State seeking to add the charge after plea negotiations failed. He did not explain how the new charge prejudiced his defenses or any evidence he intended to present.

[40] As to the charges of rape and attempted murder, during the February 22, 2019 hearing, Chaffin claimed without explanation that those charges, if allowed, would alter his defense strategy. He again complained that the State presented the additional charges only after plea agreements failed.

[41] In any event, at the March 15, 2019 hearing, Chaffin's counsel abandoned any claim that the amendments hindered his defense strategy. Instead, Chaffin told the Court, "I believe that we have the information that we need to put on an appropriate defense and my client, Mr. Chaffin, has indicated that he does not desire a continuance and he and I have talked and we believe that we are prepared and he wants to move forward." *Id.* at 39. In addition, Chaffin directly told the court he thought he would be ready for trial on the scheduled date. Under these circumstances, even if Chaffin had not waived his challenge to the State's amendments of the information, he failed to demonstrate that his defense or proposed evidence would have been harmed by the amendments.

# III. Admission of Expert Witness Testimony

[42] Chaffin claims the trial court erred in admitting portions of expert witness Caryn Burton's testimony. He does not dispute that she was qualified to testify as an expert on domestic violence issues. Instead, Chaffin claims portions of her testimony were irrelevant.

[43] The trial court is accorded wide discretion in ruling on the admissibility and relevance of evidence. *Smith v. State*, 730 N.E.2d 705, 708 (Ind. 2000). An abuse of discretion occurs when a decision is clearly against the logic and effect of the facts and circumstances before the trial court. *Paul v. State*, 971 N.E.2d 172, 175 (Ind. Ct. App. 2012). In reviewing the admissibility of evidence, we consider only the evidence in favor of the trial court's ruling and any unrefuted evidence in the appellant's favor. *Id.*

[44] In general, relevant evidence is admissible, and irrelevant evidence is not admissible. Ind. Evid. Rule 402. Evidence is relevant "if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action." Ind. Evid. Rule 401. "Even if proffered evidence or testimony is only marginally relevant, it is within the sound discretion of the trial court to admit it." *Smith*, 730 N.E.2d at 708.

[45] In *Odom v. State*, 711 N.E.2d 71, 73-74 (Ind. Ct. App. 1999), *trans. denied*, the State charged Odom after he grabbed his wife, placed a knife to her neck, and threatened to kill her. She had reported Odom's conduct to the police, but

while the case was pending, she wrote Odom a letter indicating her incriminating statements were untrue. At trial, Odom's wife testified about Odom's attack in a manner consistent with her original report to the police, and she claimed she wrote the letter only because Odom told her to, and she hoped he would be released from jail to provide support to their family.

[46] The State also offered the testimony of a psychologist, who explained why victims of domestic violence may recant prior statements. The trial court allowed the testimony over Odom's objection, and Odom was convicted of intimidation.

[47] On appeal, Odom argued the psychologist's testimony was irrelevant because Odom's wife had already testified as to why she had recanted in the letter. A panel of this Court determined that because Odom's wife had provided inconsistent statements, the expert witness's testimony would help the jury to determine which statement was more credible. The Court further stated that expert testimony that "tends to explain the witness' recantation" may still be relevant even if the witness "provides an explanation for her recantation." *Id.* at 76. The expert witness's testimony remains relevant in such a circumstance because "the reactions and behaviors of domestic violence victims are not commonly understood by laypersons," *id*. at 75, and an expert may help the jury understand the circumstances and reasons for a victim's changing story.

[48]    In Chaffin's case, Davis told a police officer and an emergency room doctor that Chaffin had attacked her. She also told a 911 dispatcher that Chaffin would not leave her apartment.

[49]    After the State filed charges against Chaffin, Davis was arrested for violating the terms of her probation. She called Chaffin's mother from jail several times. During one call, Davis expressed a willingness to talk to Chaffin and stated she would "back him up in court," State's Ex. 15R at 1:41, and that she "felt bad." *Id.* at 2:44. During a later call, Chaffin's mother told Davis that Chaffin said he could not talk to her until she "fixed" the situation. State's Ex. 16R at 2:10. Davis reiterated she would like to talk with him and volunteered to call the prosecutor. Chaffin's mother encouraged Davis to call Chaffin's attorney and tell him that she "messed up" and did not really know what had happened. *Id.* at 4:29.

[50]    In a subsequent call, Chaffin's mother told Davis she had discussed with Chaffin's attorney whether Davis would "recant[ ]" her testimony. State's Ex. 17R at 1:38. Davis indicated she was willing to talk with Chaffin's attorney. Chaffin's mother stated Chaffin would speak with Davis after the charges were dropped. In another telephone conversation, Davis told Chaffin's mother to tell Chaffin that she would do whatever she had to do to get the charges dropped. Chaffin's mother continued to refer to Davis as "recanting" her prior statements. State's Ex. 19R at 6:10 (July 27, 2018 phone call).

[51] In yet another phone call, Chaffin's mother explained to Davis that Chaffin's lawyer advised that Davis would need to sign a statement "retracting" what she had said. State's Ex. 21R at 2:17. Davis agreed she would do so, although she explained that her own lawyer had stated she potentially faced criminal penalties for contradicting her prior statement.

[52] Throughout these calls, Chaffin's mother repeatedly told Davis that Chaffin said he loved her. Davis and Chaffin's mother also discussed whether Chaffin's mother could deposit money in Davis' jail account and whether Chaffin's mother could bond Davis out of jail.

[53] At trial, Davis testified consistently with her original discussions with the police and an emergency room doctor, specifically that Chaffin had repeatedly attacked her. Recordings of Davis' phone calls with Chaffin's mother were admitted into evidence. She explained that she felt "a lot of pressure" from Chaffin's mother, Tr. Vol. 2, pp.154-55, but that she ultimately did not contact anyone to retract her story because the retraction would have been a lie.

[54] The facts of this case resemble those of Odom's case. Davis talked with Chaffin's mother several times about the case, and Davis repeatedly agreed to recant or retract what she had told police officers. Under these circumstances, as in *Odom*, Burton's expert testimony was admissible to assist the jury in weighing the credibility of Davis' various statements.

[55] Next, Chaffin claims that even if Burton's testimony was generally relevant, his objections to her testimony should have been sustained because the prosecutor's

questions to Burton were general in nature rather than hypotheticals based on evidence set forth in the record. The *Odom* court determined that when an expert witness has no personal knowledge of a case and has not examined or counseled a victim, the witness's testimony is not relevant unless it is "based upon some fact presented in the hypothetical or some reasonable inference drawn therefrom." 711 N.E.2d at 77.

[56] In the current case, Burton was not involved in the underlying circumstances of the case and did not meet Davis afterwards. On direct examination, the prosecutor asked Burton, "And are you familiar with maybe a—how society perceives individuals who experience domestic violence?" Tr. Vol. III, p. 43. The State further asked, "Okay and what are some of those common myths and misconceptions?" *Id.* at 44. Later, the State asked, "Have you—could you describe what the word minimizing is and what that means in the context of domestic violence?" *Id.* at 45. Finally, the State asked Burton to define "recanting" in the context of domestic violence and whether she had experience with individuals who had discussed recanting reports of such violence. *Id.* at 46.

[57] These questions were not hypotheticals, and they did not include facts from the record in this case. In any event, we conclude that any error in allowing the State to present those questions was harmless. An error will be deemed harmless if its probable impact on the jury, considering all the evidence in the case, is sufficiently minor so as not to affect the substantial rights of the parties. *Farmer v. State*, 908 N.E.2d 1192, 1199 (Ind. Ct. App. 2009).

In the recorded telephone calls between Davis and Chaffin's mother, Davis at times minimized Chaffin's attacks on her and further discussed recanting her police report. Thus, although the State may not have referred to facts in the record when questioning Burton, there is ample evidence to justify the State's questions about victims minimizing domestic violence and recanting reports of such violence.

Further, Davis testified at length about Chaffin's extensive attacks upon her and his attempts to contact her after his arrest, despite the protective order. Davis' testimony was supported by Officer Johnson, Paramedic Maish, the emergency room doctor who treated Davis, and a nurse who examined Davis six days later. Considering this extensive evidence, any errors in failing to require the State to ask Burton hypothetical questions were harmless.

# Conclusion

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

Kirsch, J., and Pyle, J., concur.